LAWRENCE ANDERSON WHITE v. JEAN MALCOLM WHITE

No. 8210DC1178

(Filed 18 October 1983)

**Divorce and Alimony § 21.9— equitable distribution of marital property — findings supporting conclusion**

In an action for divorce where defendant wife counterclaimed for equitable distribution of the marital property pursuant to G.S. 50-20, the trial court's findings that defendant contributed services which exceeded in value the fair market value of her interest in jointly held property and her separately held property was consistent with the court's conclusion that the parties were entitled to an equal division of the marital property.

Judges HEDRICK and WEBB concurring in the result.

APPEAL by defendant from *Cashwell, Judge.* Order entered 9 June 1982 in District Court, WAKE County. Heard in the Court of Appeals 29 September 1983.

On 23 November 1981, plaintiff husband filed an action for divorce based on one year's separation. Defendant wife counterclaimed for equitable distribution of the marital property under G.S. 50-20. Upon trial without a jury, the court found the parties were entitled to an equal division of the marital property. From this order, defendant appealed.

*James S. Warren for plaintiff appellee.*

*Kirby, Wallace, Creech, Sarda and Zaytoun, by John R. Wallace and Peter J. Sarda, for defendant appellant.*

HILL, Judge.

The resolution of this appeal depends upon the interpretation given G.S. 50-20, the North Carolina Equitable Distribution Act. This act was enacted in recognition of the concept of marriage as a partnership, a shared enterprise to which both spouses make

valuable contributions, although often in different ways. Sharp, Equitable Distribution of Property in North Carolina: A Preliminary Analysis, 61 N.C. L. Rev. 247 (1983). Equitable distribution seeks to effect upon divorce those sharing principles that motivate most couples during marriage. *Id.* In particular, it gives recognition to the essential supportive role played by the wife in the home, acknowledging that as homemaker, wife and mother she should clearly be entitled to a share of the assets accumulated during the marriage. *Rothman v. Rothman*, 65 N.J. 219, 228, 320 A. 2d 496, 501 (1974).

In this case, defendant argues the court erred in concluding the parties were entitled to an equal share of the marital property. She maintains her contributions to the marital estate greatly exceeded those of the plaintiff; therefore, she is entitled to a greater share of the marital estate. The findings of fact made by the court are summarized as follows:

The parties were married from 8 September 1951 until 6 April 1982. There were two children born of the marriage: Kevin Baird White, born 4 September 1952, and Elinor Bannon White, born 28 February 1954. Prior to the marriage, plaintiff received a B.S. degree in agricultural engineering from North Carolina State University and defendant received certification as a registered nurse from Rex Nursing School. Upon their marriage, plaintiff was employed as a salesman of heavy equipment and owned a 1951 Studebaker automobile. Defendant was employed at Rex Hospital.

Upon getting married, defendant gave up her job at Rex Hospital and moved to Charlotte with plaintiff. Shortly thereafter, defendant became pregnant with her first child. By mutual consent of the parties, defendant elected not to pursue her career as a nurse and chose instead to raise the parties' children and to seek only part-time employment as a nurse during the course of their minority. Plaintiff, throughout the first twenty-four years of the marriage, sold heavy equipment and was obligated to travel in connection with his employment. Defendant attended to the daily needs of the children, managed the parties' household and finances, did the housework in their home, and contributed substantially to plaintiff's career by acquiescing in the several moves required by plaintiff's work and by assisting and encourag-

ing plaintiff in the development of his career. Defendant was employed on a part-time basis in each of the communities in which the parties resided, often working at night and on weekends.

In June 1970, defendant obtained full-time employment with the U. S. Postal Service as an occupational health nurse and has pursued such career since that time. In July 1970, the parties separated for a period of nine months. Plaintiff was employed through 1975 but during the period of 1975-1978 did not have any regular full-time employment. Plaintiff acquired during the course of the marriage financial and investment skills which enabled him to earn income from his investments. During the marriage, plaintiff invested in securities in his separate name and purchased the bulk of his estate during the early 1970's. Plaintiff also helped defendant invest in securities in her separate name.

During 1975 through 1978, defendant's earnings and contributions to the parties' home greatly exceeded those of the plaintiff and such earnings enabled plaintiff to attend to his individual investments on a daily basis. Those earnings were as follows:

|      | Plaintiff | Defendant |
| --- | --- | --- |
| 1974 | $18,254.00 | $13,321.00 |
| 1975 | $10,852.00 | $14,746.00 |
| 1976 | $    428.00 | $15,835.00 |
| 1977 | $ 3,190.00 | $16,249.00 |
| 1978 | $ 5,035.00 | $16,641.00 |

In 1978, plaintiff obtained employment with the U. S. Postal Service and is presently so employed. Plaintiff is 55 years of age and defendant is 52. Plaintiff presently earns approximately $20,500.00 a year, has prospects of inheriting a substantial estate, and has additional steps in his salary enabling him to increase his income in the coming years. Defendant earns approximately $23,000.00 a year, has reached the maximum salary level for her position but may receive longevity increases. Plaintiff has bursitis, and defendant has arthritis and osteoporosis and has had periods of depression in the past which interfered with her employment. Plaintiff has vested pension rights of $3,300.00 and defendant has vested pension rights of $8,900.00.

Either individually or jointly, the parties own the following marital property: (1) a house, lot and greenhouse valued at $57,900.00; (2) automobiles valued at $2,500.00; (3) securities in plaintiff's name valued at $45,279.95 and in defendant's name in the amount of $27,128.91; (4) savings of $1,478.00; and (5) furniture valued at $1,000.00. Since 1975, defendant has made the mortgage payments on the house.

The court found that defendant contributed services as a spouse, parent, homemaker, and wage earner which exceed in value the fair market value of her interest in jointly held property and her separately held property. Finally, the court found that "pursuant to G.S. 50-20, an equal division of the marital property of the parties is presumed appropriate."

The first issue we must address is whether the court was correct in finding that G.S. 50-20 creates a presumption of equal division. We believe the court was correct. G.S. 50-20(c) provides:

(c) There shall be an equal division by using net value of marital property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective;

(2) Any obligation for support arising out of a prior marriage;

(3) The duration of the marriage and the age and physical and mental health of both parties;

(4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects;

(5) Vested pension or retirement rights and the expectation of nonvested pension or retirement rights, which are separate property;

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital

property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker;

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse;

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage;

(9) The liquid or nonliquid character of all marital property;

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party;

(11) The tax consequences to each party; and

(12) Any other factor which the court finds to be just and proper.

We interpret the language of G.S. 50-20(c) that "[t]here shall be an equal division . . . of marital property unless the court determines that an equal division is not equitable" as establishing a presumption of equal division of the marital property. We draw this conclusion from our comparison of similar statutes in other states. The vast majority of states which provide for an equitable distribution of property direct the courts to divide the marital property in such proportions as the court deems just considering the statutorily enumerated factors. In those states, the courts do not presumptively assign any proportion of the marital assets to each spouse; rather, they examine each case as an individual and particular entity. *See Rothman, supra* at 503. But the statutes in such states are clearly distinguishable from G.S. 50-20(c) in that they make no mention of an equal division or any other starting point from which the court should work in making its distribution.

In contrast, Wisconsin and Arkansas have property division statutes which do provide for an equal division of marital assets. The statutes of these states have been interpreted as creating a

rebuttable presumption of equal division. *See Jasper v. Jasper,* 107 Wis. 2d 59, 318 N.W. 2d 792 (1982); *Forsgren v. Forsgren,* 4 Ark. App. 286, 630 S.W. 2d 64 (1982). The Wisconsin statute, Sec. 767.255, leaves no room for a contrary interpretation as it states "[t]he court shall presume that all other property is to be divided equally between the parties, but may alter this distribution . . . after considering (the enumerated factors)." The Arkansas statute, on the other hand, is in effect virtually indistinguishable from the North Carolina statute and it too has been treated by the courts as establishing such a presumption. Arkansas statute 34-1214 states:

> All marital property shall be distributed one-half [½] to each party unless the court finds such a division to be inequitable, in which event the court shall make some other division that the court deems equitable taking into consideration (the enumerated factors).

The North Carolina legislature's decision to word G.S. 50-20(c) so that it more closely follows the Arkansas and Wisconsin statutes rather than the statutes in the majority of states clearly indicates that a presumption was intended. The practical difference between the wordings is that the wording used by the majority of equitable distribution states allows the court more discretion in its allocation of the property. G.S. 50-20(c) allows the court considerable discretion even with the presumption; therefore, we feel our interpretation of the statute is a reasonable one.

The second issue we must address is what is the proper standard of review to be utilized in reviewing the trial court's decision. We believe the division of marital property is a matter within the sound discretion of the trial court, and its judgment should not be disturbed on review unless it is shown that the division made was an abuse of discretion. "An abuse of discretion occurs when the trial court has failed to consider proper factors, has made a mistake or error with respect to the facts upon which the division was made, or when the division itself was, under the circumstances, either excessive or inadequate. (Citation omitted.)" *Jasper v. Jasper,* 107 Wis. 2d 59, 63-64, 318 N.W. 2d 792, 795 (1982).

Virtually all of the states which provide for equitable distribution have vested broad discretion in the trial courts, and

indeed, such discretion is essential if fairness is to be achieved. The courts in this state have long recognized that wide discretionary power is necessarily vested in the trial courts in reaching decisions in particular cases. *See Griffin v. Griffin,* 237 N.C. 404, 75 S.E. 2d 133 (1953). This is especially so in cases involving certain aspects of family law. *See Swicegood v. Swicegood,* 270 N.C. 278, 154 S.E. 2d 324 (1967); *Coggins v. Coggins,* 260 N.C. 765, 133 S.E. 2d 700 (1963); *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966).

That our legislature intended to grant courts wide discretion in dividing marital property is indicated by (1) the language of G.S. 50-20(c); (2) the existence of the twelve enumerated factors in the statute which the court is to consider in determining what will be an equitable division; (3) the existence of the catchall factor in G.S. 50-20(c)(12) whereby the court is permitted to consider "any other factor which the court finds to be just and proper"; and (4) the lack of any indication as to the quantum of evidence on each of the factors required to overcome the presumption.

This is not to say the courts have unlimited discretion in this matter. The courts are limited by the presumption of equal division and by the requirement of G.S. 50-20(j) that they justify their distribution of property with written findings of fact. Furthermore, "the exercise of discretion implies conscientious judgment arrived at in accordance with established rules, and not arbitrary action." 1 Strong's N.C. Index 3d Appeal and Error § 54 (1976).

In this case, the court considered all of the relevant factors enumerated in G.S. 50-20 and concluded the evidence did not justify alteration of the equal property division presumption. The court's finding that defendant contributed services which exceed in value the fair market value of her interest in jointly held property and her separately held property is consistent with the court's conclusion. Defendant received considerably more as a result of the equal division of the marital property than she would have if she had received only the value of her interest in the jointly held property and her separate property. We find no abuse of discretion in the division of the estate.

Affirmed.

Judges HEDRICK and WEBB concur in the result.

Judge HEDRICK concurring in the result joined by Judge WEBB.

Defendant does not challenge the trial court's findings of fact, but rather contends that the findings compel a conclusion that defendant's contributions to the marriage greatly exceeded those of the plaintiff, and that this discrepancy is so great that an unequal division of the marital property was required as a matter of law. While we agree with Judge Hill that the court's findings of fact support its conclusions of law, we believe it inadvisable in this case to undertake a definitive discussion of the Equitable Distribution Act. A great deal of Judge Hill's opinion is dicta, unnecessary to the decision. We note with special concern Judge Hill's discussion of the proper standard of appellate review. He speaks first of "limited discretion," later of "broad discretion," and finally concludes that "[t]he court's conclusion is supported by the findings of fact;" and thus does not amount to "an abuse of discretion." Despite Judge Hill's conscientious discussion of the issue, we are unable to distill from the opinion a resolution of the question of the proper standard of review. Because we believe the result is the same under any standard of review, we would leave the question for another day.