COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Coleman and Overton
Argued at Alexandria, Virginia


ALVIN EDWARD NIEDER

MEMORANDUM OPINION[*] BY
v.  Record No. 1248-95-4         JUDGE JAMES W. BENTON, JR.
                                         JUNE 18, 1996
MYEONG YAE NIEDER


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    F. Bruce Bach, Judge

          John P. Snider (Alvin E. Nieder, pro se, on
          briefs), for appellant.

          James Ray Cottrell (Gannon, Cottrell & Ward,
          P.C., on brief), for appellee.



     Alvin E. Nieder appeals from a final decree of divorce. He

contends that the trial judge failed to equitably distribute the

parties' assets, erred in the awards of spousal and child

support, and awarded excessive attorney's fees to his wife,

Myeong Nieder. Upon reviewing the fourteen issues he presents,

we affirm thirteen of the trial judge's rulings. We reverse one

of the trial judge's rulings and remand for the trial judge to

grant to the husband credit for the fair market rental value of

the family's residence from the date of the divorce to the date

the residence is sold.

     The parties married in 1980 in Korea while the husband was

in the military. They have two children: a son, born April 18,

1981, who is institutionalized with a neurological disorder and a

_____
          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

daughter, born September 23, 1983, who currently lives with her mother. During the marriage, the husband was verbally and physically abusive to the wife and children. On January 9, 1994, the wife obtained an emergency protective order against the husband. They have been separated since that time. The wife filed for a divorce in February 1994. On January 25, 1995, a judge ruled that the husband abused his two children and prohibited the husband from entering the home without a further order.

Following equitable distribution and support hearings, the trial judge made various rulings and awards reflected in the final decree of divorce entered May 10, 1995. The husband alleges that the trial judge committed fourteen reversible errors. Much of the husband's appeal is based upon his claim that his separate assets were incorrectly classified as marital property.

On appeal, "[w]e are guided by the principle that decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994). Under Code § 20-107.3(A)(2), "[a]ll property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Stroop v. Stroop, 10 Va. App. 611, 614-15, 394 S.E.2d

861, 863 (1990).  "Separate property is . . . all property acquired by either party before the marriage."  Code § 20-107.3(A)(1).  Consistent with these principles, we address the issues in the order the husband briefed them.

1.  **Husband's contribution to purchase of current residence.**

The evidence proved that prior to the marriage, the husband had funds in a Merrill Lynch account and an Ent Federal Credit Union account.  During the marriage he opened several other accounts and transferred funds from one account to another.  Some of the funds transferred among these accounts came from the husband's sister and the husband's property investments.

In 1982, the parties moved to Virginia and bought a house in Lorton, using money from the Merrill Lynch account to make the down payment.  The parties sold the home in 1988 when the husband was restationed in Korea and they deposited the proceeds into a joint stock account.  When the parties returned from Korea, some of those proceeds, as well as money from other accounts, were then used to purchase the current residence.

In determining the husband's separate contribution to the current residence, the trial judge found "that $40,800 of [the husband's investment] retains its separate property character." Just prior to making this finding the trial judge stated to both attorneys:  "[d]on't let me commit errors here, if I'm clearly committing an error, stop me . . . I don't mean on how much, but, if I'm doing something I can't do under [Code § 20-]107.3, I want

you to let me know." Husband's counsel did not object to the trial judge's valuation of the separate property during the evidentiary hearing. Husband first contested this ruling after entry of the final decree when he filed a motion to reconsider.

The evidence supporting the husband's claim that he took funds from a separate account and applied them to the home purchase was his oral testimony and inferences argued from a very incomplete financial trail. During the evidentiary hearing, the husband produced copies of three checks which totaled $43,014.65 and testified that the source of those checks was his separate property. The trial judge rejected as evidence documents identified as check stubs that contained handwritten notations by the husband. The record did not contain a settlement statement showing $48,000 in payments that the husband asserts were separate funds.

The checks that the husband contends were used to purchase the house were payable to the husband. No evidence, save the husband's testimony, established the purpose for which the checks were drawn and used. The trial judge was not required to accept his testimony. Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 869 (1990). On this evidence, we cannot say that the trial judge was plainly wrong in finding that only $40,800 retained its separate property character. Keyser v. Keyser, 7 Va. App. 405, 409, 374 S.E.2d 698, 701 (1988).

2. **The American Securities Bank account**

The evidence proved the husband opened an American Securities Bank account in 1993 and deposited $35,000 from his Pentagon Federal Credit Union account. A January 1994 statement revealed that the American Securities account balance was $6,851.36. The husband testified that he had transferred money to the Ent Federal Credit Union to pay bills. However, the evidence does not establish the amount of the transfers. The record also does not contain any other statements of transactions involving the American Securities account.

Without evidence to establish the source of the account balance and evidence to prove that other transactions did not result in changes in the American Securities account, husband has not adequately proved his claim that the account retained its separate character. The evidence proved that moneys were moved in and out of all the accounts frequently. Therefore, the trial judge did not err in classifying the remaining funds in the account as marital property.

3. **The Ent Federal Credit Union Savings account**

The husband contends that his Ent Federal Credit Union Savings account, opened in 1978, retained its characteristic as separate property. The evidence failed, however, to establish the account's balance prior to the marriage. The evidence indicates that the husband deposited funds into this account in October 1993 from the Pentagon Federal Credit Union account. He contends that the funds were separate property. However, the

account statements include numerous withdrawals from and deposits to the accounts that were never explained at trial.  The husband admitted that during the marriage there were "a whole series of money transfers [between different accounts depending upon] whichever savings account paid the highest interest rate."

Although the husband's counsel argued that various other separate properties were transferred into this account, the evidence did not prove any of these transactions.  Based upon the evidence that a "whole series of money transfers" occurred, we cannot say that the evidence proved that the property was separate.  See Code § 20-107.3(A)(2).  Thus, the trial judge did not abuse his discretion by classifying the account as marital property and considering its value in making a monetary award.

4.  **The Marital Share of the Military Pension**

Pursuant to Code § 20-107.3(G)(1), the trial judge awarded the wife fifty percent of the marital share of the husband's military pension.  The husband contends that 55.8 percent of the total pension represents the marital share and that the trial judge erred in finding the marital share to be 56.2 percent.

The small difference between the two figures arises because of an uncertainty as to when the husband began earning his military pension.  The record reveals that the trial judge and counsel considered this problem and after discussion arrived at the 56.2 percent figure.  We find no evidence that this ruling was plainly wrong and, thus, will not disturb it.  McDavid, 19

Va. App. at 407-08, 451 S.E.2d at 715.

5. **Crediting the husband for mortgage payments**

After the separation, both parties refused to pay the mortgage for several months. The original pendente lite order did not direct the husband or the wife to pay the mortgage. In May of 1994, the trial judge held a hearing to modify the pendente lite order and ordered the wife to pay the mortgage. However, in the final decree of divorce, the husband and wife were each ordered to pay fifty percent of the mortgage.

From the time of the divorce, both parties have owned the residence as tenants in common. Code § 20-111. The wife has enjoyed exclusive possession of the house since the divorce and only paid half of the mortgage. We have held in similar circumstances that the husband should receive "the fair market rental value of [his] interest in the property." Gaynor v. Hird, 15 Va. App. 379, 382, 424 S.E.2d 240, 243 (1992). Accordingly, we remand this issue to the trial judge to grant to the husband a similar credit from the date of divorce until the property's date of sale. See id.

6. **Classifying the Pentagon Federal Credit Union**

At trial husband's counsel conceded "that $25,000 [in the Pentagon account] was marital" property. The husband now contends that he was entitled to all of those funds because he paid for marital expenses, including the mortgage and attorney's fees, out of this account. At the time of his ruling, the trial

- 7 -

judge was aware of these payments.  He did not abuse his discretion by dividing the account equally between the parties.

7.  **Classification of the Individual Retirement Account**

The husband claims that his IRA in Olde Discount Corporation contained only his separate property.  However, he opened the account after the marriage.  The evidence did not trace the funds in this account and did not prove by a preponderance of the evidence that the account was not a marital asset.  Code § 20-107.3(A).  In his brief, the husband cites to a chart as "coherent [and] concise [proof] of each IRA contribution" but that exhibit was never introduced into evidence.  Furthermore, the evidence did not prove the origin of the funds.  The husband had the burden of proving at trial that the IRA was separate property.  Code § 20-107.3(A).  He did not do so.

The husband also complains that the trial judge valued the account at the time of the hearing instead of the separation date.  Under Code § 20-107.3(A), "[t]he court shall determine the value of any [assets] as of the date of the evidentiary hearing." The trial judge properly determined the value of the IRA at the time of the evidentiary hearing and did not abuse his discretion in classifying or valuing the IRA.

8.  **Classifying the Olde account**

In his brief, the husband argues that his Olde account should be classified as separate.  At trial he introduced numerous account statements and other financial data regarding

this account that he opened during the marriage.  In his brief he states that he received all of the money from his sister.  However, the record does not establish that he traced the money in the account and proved that the account did not constitute marital property.  The testimony of the husband and his sister was confusing and not well supported by documents.  Thus, we hold that the trial judge was not plainly wrong in classifying the account as marital.

9. **Calculating the Marital Equity in the Vehicles**

The husband claims that the trial judge inequitably divided the couple's two vehicles by finding that "[a]s far as the two cars, you keep what you have and you're responsible for the debt."  The fact that the amount of equity in the two cars was unequal does not establish that the trial judge was plainly wrong.  We find no abuse of discretion.

10. **Classifying the funds invested in the first residence**

The husband and wife partially financed the current residence with the proceeds from the sale of their first home.  The husband contends that he invested $10,925 from his separate Merrill Lynch account into the first home and is entitled to credit for that investment.  The husband attempted to trace his investment with only his oral testimony and did not support his claim by providing proof of the source of those funds.  Based upon the husband's testimony, the trial judge did not err in classifying all the proceeds from the first home as marital.  See

<u>Klein</u>, 11 Va. App. at 161, 396 S.E.2d at 869.

11. **Credit for the assets the husband owned prior to the marriage**

Prior to determining how the assets should be divided, the trial judge acknowledged that "[the husband] definitely had considerable property at the beginning of the marriage." The husband argues that the trial judge did not, however, consider his separate assets brought into the marriage. This aspect of the case is a general appeal of the trial judge's decision and is not directed at any particular asset.

The trial judge noted that "[i]t's hard to me to imagine on a relatively small estate a more complicated situation than this one. I've never seen more transfers and money going around." The record supports the trial judge's finding that the husband constantly shifted funds in and out of his various bank and brokerage accounts. In an appeal from an equitable distribution decree, "we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." <u>Artis v. Artis</u>, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). Due to the confusion over where different funds were shifted and the husband's failure to adequately trace these assets, we hold that the trial judge did not err in refusing to award the husband greater credit for his claim of separate assets.

12. **Spousal support**

Determining the amount of spousal support rests "within the

sound discretion of the trial [judge] and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Floyd v. Floyd, 17 Va. App. 222, 224, 436 S.E.2d 457, 458 (1993). The trial judge must consider the factors in Code § 20-107.1, but is not required to recite specific findings from the evidence relative to each factor or assign the weight accorded to it. Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986).

The record establishes that the husband retired from the Army in 1991 and is now fully employed. The wife is a registered nurse. During the marriage, the husband paid the household bills and mortgage and the wife paid for things such as family clothing, the children's lessons and entertainment and food. The trial judge heard extensive evidence regarding the equitable distribution of the parties' property and the financial circumstances of the parties. The award of $600 in monthly spousal support was based upon competent evidence presented at trial. See Gibson v. Gibson, 5 Va. App. 426, 435, 364 S.E.2d 518, 523 (1988). The evidence at trial touched upon all of the factors enumerated in Code § 20-107.3(E). When such substantial evidence exists, we will not reverse the trial judge's decision. Id.

13. **Child support**

Both parties presented evidence and argued over the actual cost of child care and the proper amount of child support. The

trial judge found the wife's $333 monthly payment for child care a legitimate cost. The trial judge also lowered by $200 the total amount of child support calculated under the support guidelines because of the son's institutionalization. Based on the evidence in the record, the trial judge committed no error in ordering the husband to pay $856 per month in child support.

14. **Attorney's fees**

"The allotment of costs and attorney's fees is a matter within the sound discretion of the trial court." D'Auria v. D'Auria, 1 Va. App. 455, 461, 340 S.E.2d 164, 167 (1986). Based upon the evidence at the extensive hearings, we find no support for the husband's contention that the trial award of $12,000 in attorney's fees was excessive and plainly wrong.

For these reasons, we reverse and remand this case with direction to the trial judge to award the husband credit for his portion of the fair rental value of the residence accruing after the entry of the divorce decree. All other rulings by the trial judge are affirmed.

<u>Affirmed in part,
reversed in part
and remanded</u>.